19454

The STATE, Respondent, v. Gene HAM, Appellant
(191 S. E. (2d) 13)

120

*Messrs. Mordecai C. Johnson* and *John A. Gaines,* of Florence, *for Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *Emmet H. Clair, Asst. Atty. Gen.,* of Columbia, and *T. Kenneth Summerford, Sol.,* of Florence, *for Respondent,*

*Messrs. Mordecai C. Johnson* and *John A. Gaines,* of Florence, and *Jack Greenberg* and *Jonathan Shapiro,* of New York, New York, *for Appellant, in Reply.*

July 17, 1972.

Moss, Chief Justice.

This is an appeal by Gene Ham from his conviction for the possession of a drug known as Librium, without a medical prescription and without being prescribed or administered by medical prescription or authority, said drug being designated as having a potential for abuse because of its depressant or stimulant effect on the central nervous system or its hallucinogenic effect, in violation of Section 32-1506(d) of the 1962 Code, as amended.

The appellant was arrested on May 15, 1970, in the City of Florence on the basis of four warrants charging him with possession and sale of stimulant drugs. Thereafter, a fifth warrant was issued charging the appellant with the possession of marijuana. Following a preliminary hearing before a magistrate for Florence County, who found probable cause, the appellant, on June 1, 1970, was indicted by the Grand Jury of Florence County. On June 2, 1970, the appellant was tried and convicted on the indictment charging him with the possession of marijuana. This conviction was appealed to this Court and, by our opinion of April 7, 1971, such conviction was affirmed. *State v. Ham*, 256 S. C. 1, 180 S. E. (2d) 628. This case is now before the United States Supreme Court on a *writ of certiorari*.

The appellant was again arrested on June 23, 1970, and charged with assault and battery with intent to kill, and a true bill thereafter was returned by the Florence County Grand Jury. The next term of General Sessions Court for Florence County was scheduled to commence on October 5, 1970.

It appears that the present case was called for trial at the 1971 June Term of the Court of General Sessions for Florence County. At that time, the appellant made a pretrial motion to dismiss the indictment on the ground that he had been denied his right to a speedy trial as provided for in Article I, Section 18 of the 1895 Constitution of this State

and the Sixth Amendment to the Constitution of the United States. It appears that counsel for the appellant, by letter dated September 25, 1970, addressed to the solicitor of the circuit, requested to know the order in which the three remaining drug cases and the assault and battery case would be scheduled for trial. Counsel for the appellant was notified that the State would proceed to trial at the October Term of the case charging assault and battery with intent to kill. It appears that on October 8, 1970, counsel for the appellant filed a petition for removal with the United States District Court of South Carolina, pursuant to 28 U. S. C. A., Section 1443(1). This case was remanded to the State Court by an Order of the United States District Court filed on October 20, 1970. However, this remand Order was stayed by an Order of the Fourth Circuit Court of Appeals, such remaining in effect until September 13, 1971, when it was vacated. It thus appears that the State was without jurisdiction from October 8, 1970, until September 23, 1971, to try the appellant on the assault and battery charge which the State and appellant's counsel had agreed would be tried at the 1970 October Term of the Court of General Sessions for Florence County. *State v. Moore,* 4 Cir., 447 F. (2d) 1067.

At the 1970 December Term of the Court of General Sessions for Florence County, this being a term of one week, the State tried those persons who were being held in the county jail, many of whom were charged with murder. The appellant was not tried at such term because the court was without jurisdiction to try the case, which counsel had agreed would be called to trial. The appellant was not tried at the December term even though he was in jail as a result of the alleged violation of the condition of his bond on the drug charges, and being charged with assault and battery. However, he was released from jail on December 23, 1970, upon his own recognizance.

At the 1971 January Term of the Court of General Sessions, the State was still restrained from trying the appellant on the assault and battery charge because of the Order of

the Fourth Circuit Court of Appeals. The State then called for trial the remaining three drug indictments. The appellant moved for a continuance of these cases on January 18, 1971, which was denied by the presiding judge. However, at the request of counsel for the appellant, the State effectively continued these cases by not calling them for trial.

Counsel for the appellant admits that on February 26, 1971, the State agreed, at his request, not to call any of the cases against the appellant for trial at the 1971 March Term of the Court of General Sessions.

We quote the following from *State v. Dukes,* 256 S. C. 218, 182 S. E. (2d) 286.

"In *Wheeler v. State,* 247 S. C. 393, 147 S. E. (2d) 627, we said:

" 'Whether or not a person accused of crime has been denied his constitutional right to a speedy trial is a question to be answered in the light of the circumstances of each case. A speedy trial does not mean an immediate one; it does not imply undue haste, for the state, too, is entitled to a reasonable time in which to prepare its case; it simply means a trial without unreasonable and unnecessary delay. 21 Am. Jur. (2d), Criminal Law, Section 243. As was said in *Beavers v. Haubert,* 198 U. S. 77, 25 S. Ct. 573, 49 L. Ed. 950:

" ' "The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice." '

"The burden was on the appellants, who assert that they were denied their constitutional right to a speedy trial, to show that the delay was due to the neglect and willfulness of the State's prosecution. 21 Am. Jur. (2d), Criminal Law, Sections 251-253, at page 286, *State v. Hollars,* 266 N. C. 45, 145 S. E. (2d) 309. It has been held that 'while justice should be administered with dispatch, the essential ingredient is orderly expedition and not mere speed.' *Smith v.*

*United States,* 360 U. S. 1, 79 S. Ct. 991, 3 L. Ed. (2d) 1041."

The counsel for the appellant frankly admits that when he made a motion for a continuance of the drug cases at the January term of Court, it was based upon the pendency of the appeal to this Court by the appellant from his conviction in the marijuana case, to which reference is hereinbefore made. The appellant also admits that the request for a continuance, to which the State agreed, on February 26, 1971, was due to a petition filed by him in the Federal District Court for injunction to enjoin the prosecution in this case as well as all of the other cases. The record reveals that the appellant never made any request for immediate trial while the cases were pending against him, but only asked as to the order in which the cases would be called with the result hereinbefore stated.

The delay in the trial of the drug cases and the assault and battery case is attributable to his own actions, as is hereinbefore related. He cannot take advantage thereof and escape prosecution on the basis of a denial of a speedy trial when such delay was brought about by his own tactics and was in no way attributable to the neglect and willfulness of the State. We think that there was no error on the part of the trial judge in refusing to dismiss this prosecution on the ground that the appellant had been denied a speedy trial.

The appellant moved to quash the indictment on the ground that it failed to allege the offense substantially in the language of the statute and was fatally vague, in violation of Section 17-402 of the Code, as amended, and in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 18 or the South Carolina Constitution. This motion was refused by the trial judge and error is alleged.

Section 17-402 of the Code provides:

"Every indictment shall be deemed and judged sufficient and good in law which, in addition to allegations as to time

and place, as required by law, charges the crime substantially in the language of the common law or of the statute prohibiting the crime or so plainly that the nature of the offense charged may be easily understood and, if the offense be a statutory offense that the offense be alleged to be contrary to the statute in such case made and provided."

In *State v. McIntire,* 221 S. C. 504, 71 S. E. (2d) 410, we held that the true test of the sufficiency of an indictment is not whether it could have been more definite and certain, but whether it contains the necessary elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet. See also, *State v. Solomon,* 245 S. C. 550, 141 S. E. (2d) 818. The indictment here under Section 32-1506 (d) of the Code, clearly charges the crime substantially in the language of the statute, in accordance with Section 17-402 of the Code, and gives the appellant ample notice of the charge against him.

The appellant argues the indictment allèges a violation on May 14, 1970, but does not allege the place or the time of day when he comitted the crime charged against him. The indictment alleges that the crime was commited in Florence County on May 14, 1970. Time is not of the essence or gist of the offense,the precise time at which the offense is charged to have been committed is not material. The indictment does specifically charge that the offense was committed on May 14, 1970, and this was sufficient.

The offense charged in the indictment is the crime set out in Section 32-1506 (d) of the Code, as amended, with appropriate definitions set out in Section 32-1505 (a) (3), as amended. The appellant argues that the exceptions contained in Section 32-1507 of the Code, as amended, should have been negatived in the indictment. We think not. In *State v. Solomon,* 245 S. C. 550, 141 S. E. (2d) 818, the rule was announced that if "the language of the exception, found in any part of the statute, must be re-

garded as descriptive of the offense created by such statute, then such exception must be negatived; but, if it cannot properly be so regarded, then it becomes a matter of defense, and need not be negatived." Under this rule, the exceptions need not be negatived because they are not referred to in Section 32-1506 (d) of the Code, as amended; do not form a part of the description of the offense; and are contained in a separate statute. The exceptions therefore constitute matters of defense. We find no error on the part of the trial judge in refusing to quash the indictment on the ground stated.

The appellant was indicted under Section 32-1506 (d) of the Code, as amended, which makes unlawful:

"The possession of a depressant, stimulant, counterfeit or illegal drug by any person, unless such person obtained such drug on the prescription of a practitioner, or in accordance with Section 2 (a) 2."

The term "depressant or stimulant drug" is defined by Section 32-1505 (a) (3) of the Code, as amended, as being:

"Any drug which contains any quantity of a substance which the State Board of Health and the appropriate Federal drug authorities have found to have, and by regulation designated as having, a potential for abuse because of its depressant or stimulant effect on the central nervous system or its hallucinogenic effect."

The term "illegal drug" is defined by Section 32-1505 (b) and means "any depressant or stimulant drug * * * not legally held in possession as provided by this act or any other section of the Code of Laws of South Carolina."

The appellant asserts that Section 32-1505 (a) (3), under which he contends he was charged in conjunction with Section 32-1506 (d) as amended, is unconstitutionally vague, denies fair notice and contains an unconstitutional delegation of authority.

Section 32-1506 (d) makes the possession of a depressant or illegal drug a crime unless such drug was ob-

tained on the prescription of a practitioner. The indictment here charges the appellant with the possession of a drug known as Librium without having obtained such pursuant to a prescription of a medical practitioner. If possession of Librium could only result from a prescription of a practioner, and the appellant had such a drug in his possession, without obtaining such pursuant to a prescription, then Librium would be an "illegal drug" within the meaning of Section 32-1505 (b) and subject the appellant to prosecution for the possession thereof under Section 32-1506 (d), as amended. Whether or not Librium was an illegal drug, irrerespective of whether it was a depressant or a stimulant, would depend upon proof.

The possession of an illegal drug as such is defined in Section 32-1505 (b) subjected the appellant to prosecution under Section 32-1506 (d), as amended, and hence Section 32-1505 (a) (3) did not constitute a part of the charge against the appellant. It follows that we do not reach the question of whether Section 32-1505 (a) (3) is unconstitutionally vague, lacking notice and an unconstitutional delegation of authority.

The appellant asserts error on the part of the trial judge in refusing to grant his motion for a directed verdict of not guilty.

In deciding whether the court erred in not directing a verdict in favor of the appellant, we must view the the testimony in the light most favorable to the State. When a motion for a directed verdict is made, the trial judge is concerned with the existence or nonexistence of evidence, not with its weight, and although he should not refuse to grant the motion when the evidence merely raises a suspicion that the accused is guilty, it is his duty to submit the case to the jury if there is evidence, either direct or circumstantial, which reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced. *State v. Albert,* 257 S. C. 131, 184 S. E. (2d) 605.

The State presented the testimony of one Mike Martin who was an employee of the City of Florence. He testified that he had known the appellant for some three or four months. He stated that he met the appellant on Griffin Street at a place called "The Down Beat" in the City of Florence some time after 9:00 at night on May 14, 1970. As a result of a conversation with the appellant, he purchased ten to twelve capsules at a price of $10.00, the money being furnished him by a Lieutenant Lessmeister, a detective on the city police force. After the purchase, the witness returned to the police station and delivered the capsules purchased to the Lieutenant who had furnished the money for such.

Lieutenant Lessmeister was also called as a witness by the State. He corroborated the testimony of the witness Martin, as to giving him money in order to purchase drugs from the appellant. He verified that he received twelve capsules from Martin. He further testified that he delivered one of the capsules to Reed Long, a South Carolina Law Enforcement Officer. Officer Long was to take the capsule to Lieutenant Wilson, Director of the Chemical Laboratory, at the S L E D Headquarters for analysis and testing.

Officer Long was called as a witness and he testified that he delivered the capsule in question to Lieutenant Wilson for the purpose aforesaid.

Lieutenant J. K. Wilson, Director of the Chemical Laboratory at S L E D Headquarters, was called as a witness and testified that he received from Officer Reed Long the capsule in question. Examination revealed that the contents of the capsule were Librium. He further testified that Librium is classified as a depressant and could only be obtained upon a prescription. He testified that some time after he had received the first capsule, eleven other capsules were delivered to him by Lieutenant Lessmeister. He tested one of the eleven capsules delivered to him and found it to contain Librium.

The appellant did not testify but sought to establish an alibi through one Arthur Stanley who testified that the appel-

lant was at his home in Darlington, South Carolina on the night of the alleged crime.

In our opinion, considering all of the evidence in the light most favorable to the State, such was sufficient to require the submission thereof to the jury. The verdict of the jury is fully supported by the evidence. It follows that there was no error on the part of the trial judge in refusing the motion of the appellant for a directed verdict of not guilty.

The appellant alleges that the trial judge committed reversible error in refusing his pretrial motion to dismiss the indictment on the ground that there has been undue publicity concerning drugs generally, and concerning the appellant, and by reason thereof, he could not obtain a fair and impartial trial.

At the hearing of the appellant's pretrial motion, he introduced a number of articles clipped from various newspapers concerning the drug problem in this country. Three of these articles taken from the local newspaper, related to the appellant, the first article concerned his arrest; the second reported the fact of his conviction in the marijuana case hereinbefore referred to; and the third article related to his motion made in the United States District Court to enjoin his prosecution in the State Court.

The appellant did not make a motion for a continuance or a change of venue, asserting that such would be of no help to him and that the only solution would be to dismiss this prosecution.

The position of the appellant is a novel one and we have not been able to find any precedent for such a dismissal nor has he cited any authority for such.

The appellant has made no showing that he has suffered any prejudice as the result of the pretrial publicity relating to drugs. We can take notice of newspaper articles concerning the drug problem in our nation and of the efforts being made by law enforcement officers, state and federal, to curb the drug problem locally and in this country.

The jurors selected to try this case were placed on their *voir dire* and were questioned fully about any prejudice, bias or adverse influence from newspaper publicity relating to the appellant. The jurors selected to try this case stated under oath that they were not biased or prejudiced and could give the defendant a fair and impartial trial. It follows that the claimed prejudice from newspaper publicity was not established. The appellant was not entitled to a dismissal of the indictment against him for pretrial publicity which he considered adverse to him. Assuming adverse pretrial publicity, such would only entitle the appellant to a new trial and not to a dismissal of the indictment. It follows that there was no error on the part of the trial judge in refusing the motion of the appellant to dismiss the prosecution on the grounds stated.

The appellant contends that his constitutional rights were violated by the trial court's refusal to permit his counsel to examine the jurors on their *voir dire* and refusing to ask a number of questions submitted by him.

The appellant submitted a list of more than 200 proposed *voir dire* questions.

The record shows that the trial judge conducted a *voir dire* examination of each prospective juror, propounding the questions as required by Section 38-202 of the Code. The trial judge refused to allow counsel for the appellant to examine the prospective jurors by asking them the submitted questions. However, the trial judge, in addition to the statutory inquiries required by Section 38-202 of the Code, did propound two additional questions and inquired of each juror as follows:

"(1) Would your judgment be affected if you are selected as a juror by the fact that he may be engaged in civil rights work?

"(2) Have you read any newspaper accounts about the activities of the defendant?"

We held in *State v. Britt,* 237 S. C. 293, 117 S. E. **(2d)** 379, and *State v. Peterson,* 255 S. C. 579, 180 S. E. (2d) 341, that the trial judge may, if the circumstances seem to him to demand it, permit counsel engaged in the case to also examine prospective jurors. However, we therein expressed the opinion that the better practice is for the trial judge, and not the attorney, to conduct the examination. We also pointed out that after the statutory questions have been asked and answered, any further examination of a juror on *voir dire* must be left to the discretion of the trial judge, which is subject to review only for abuse thereof.

The trial judge, in this case, did conduct a *voir dire* examination sufficiently broad and determined that every juror presented was unbiased and impartial. We find nothing in the record to indicate that the refusal of the trial judge to propound the questions submitted by the appellant constituted an abuse of discretion. *State v. Sellers,* 257 S. C. 35, 183 S. E. (2d) 889. This exception of the appellant is overruled.

While Mike Martin, a witness for the State, was under cross examination by counsel for the appellant, he was asked this question: "You don't like black people, do you?" The State objected and the trial judge sustained the objection. The appellant alleges that this was error.

We think that the inquiry attempted by counsel for the appellant was properly denied by the trial judge because such was not pertinent to any issue in the case. We have held that the trial judge has broad discretion in determining the general range and extent of cross examination, subject to the limitation that the inquiry must relate to matter pertinent to the issues involved, as such tends to affect the credibility and veracity of the witness. The exercise of such discretion will not be disturbed except in case of manifest abuse thereof. *State v. Swilling,* 249 S. C. 541, 155 S. E. (2d) 607, and *State v. Lee,* 255 S. C. 309, 178 S. E. (2d) 652.

We find no abuse of discretion on the part of the trial judge and the exception posing this question is overruled.

The trial judge instructed the jury, as a matter of law, that the drug Librium was a depressant and the appellant excepted to this charge and alleges that such was erroneous. We disagree.

The only testimony in the record was that the drug Librium was a depressant. No testimony was offered by the appellant contradictory of this evidence. Where facts in criminal prosecution are admitted or proved without contest, court may assume their truth in conducting trial and charging jury without infringing rule against comment on weight of evidence. *State v. Bazen,* 89 S. C. 260, 71 S. E. 779. A trial judge may assume that a fact established by uncontradicted evidence has been proved. *Denmark v. State,* 44 Ga. App. 157, 161 S. E. 286.

The exceptions of the appellant are found to be without merit and the judgment of the lower court is,

Affirmed.

LEWIS and LITTLEJOHN, JJ., concur.

BRAILSFORD and BUSSEY, JJ., dissent.

BRAILSFORD, Justice (dissenting) :

I must conclude that the indictment is fatally deficient in failing to charge an offense in substantially the language of the statute or otherwise alleging the essential elements of the offense intended to be charged. The relevant provisions of the statute make it unlawful to possess (unless obtained by prescription) a drug "which contains any quantity of a substance which the State Board of Health and the appropriate Federal drug authorities have found to have, and by regulation designated as having a potential for abuse because of its depressant or stimulant effect on the central nervous system or its hallucinogenic effect." Act No. 915, Acts of 1966, Sec. 2(d), Sec. 1(a) (3).

The indictment charges that the defendant violated "Section 32-1506, paragraph 2d of the 1962 Code of Laws" [1] by possessing a quantity of drugs not obtained by medical prescription, "said drugs designated as having a potential for abuse because of its depressant or stimulant effect on the central nervous system or its hallucinogenic effect, namely Librium." The meaning of the accusatory language is obscure. It even falls short of charging that the drug did contain a substance "having a potential for abuse because of its depressant or stimulant effect . . . . " Clearly, it failed to allege that the drug contained a substance which, in the words of the statute, "the State Board of Health and the appropriate Federal drug authorities have found to have, and by regulation designated as having a potential for abuse . . . . " Act No. 915, Acts of 1966, Sec. 1(a) (3), referred to in the majority opinion as Section 32-1505(a) (3) of the Code.

The indictment makes no attempt to charge possession of an "illegal drug" as defined by Section 1(b) of the Act, referred to in the majority opinion as Section 32-1505(b) of the Code, to which the opinion mistakenly, in my view, resorts, after having recognized that, "The offense charged in the indictment is the crime set out in Section 32-1506(d) of the Code, as amended, with appropriate definitions set out in Section 32-1505(a) (3), as amended." [2]

I would reverse the judgment appealed from.

BUSSEY, J., concurs.

BUSSEY, Justice (dissenting):

I fully concur in the dissenting opinion of Mr. Justice Brailsford but desire to point out additional reasons why the conviction should not be allowed to stand.

The brief of appellant raises a quite serious question as to the constitutionality of Sec. 1(a) (3) of Act No. 915,

---

[1] There is no such code section. The reference should have been to Act No. 915 of 1966 as amended by Act No. 1187 of 1970.

[2] See Act No. 915 of 1966, Sec. 2(d) and Sec. 1(a) (3).

Acts of 1966, as amended by Act No. 1144 of the Acts of 1970. See the case of *State of South Dakota v. Johnson etc.*, 84 S. D. 556, 173 N. W. (2d) 894, and the authorities therein cited. Such constitutional issue, in my view, cannot be soundly avoided by erroneously concluding that the particular section of the Act did not constitute a part of the charge against the appellant. It is, however, unnecessary to reach the constitutional issue for a quite different reason.

Assuming the constitutionality of the challenged section, under the plain language thereof and the language of the indictment, there was, in my view, error below in charging the jury that librium was a "depressant" as a matter of law and in refusing to direct a verdict of not guilty for failure of proof. Whether or not librium is a "depressant", the possession of which without a prescription is prohibited by said Act, is dependent entirely upon the provisions of Sec. 1(a) (3) as amended, which defines the term "depressant or stimulant drug" as follows:

"Any drug which contains any quantity of a substance which the State Board of Health and the appropriate Federal drug authorities have found to have, and by regulation designated as having, a potential for abuse because of its depressant or stimulant effect on the central nervous system or its hallucinogenic effect."

While Lt. Wilson did testify that "librium" was a "depressant", there is a total absence of any evidence that it is a depressant within the purview and intent of the statutory language, just above quoted.

In appellant's brief it is pointed out that the indictment did not refer to librium by its chemical or generic name and asserted that "Librium" is known chemically as chlordiazepoxide hydrochloride or chlordiazepoxide HCl", citing Physician's Desk Reference, 26th Ed., 1927, p. 1137. Neither the cited authority nor any similar work is immediately available to the author, but such technical definition of librium is not questioned by the respondent.

Pursuant to the authority of Act No. 915 of the Acts of 1966, the State Board of Health, on November 3rd, 1969, promulgated and filed in the Office of the Secretary of State a regulation as to "Drugs having potential for abuse and habit forming." 1970 Acts and Joint Resolutions, page 3569. While numerous drugs are classified in said regulation as having either a "stimulant" or "depressant" effect on the central nervous system, or a hallucinogenic effect, neither the word "librium" nor the terms "chlordiazepoxide hydrochloride or chlordiazepoxide HCl" appear in said regulation. If, perchance, librum is included within some other specific or generic term used in the regulation, such has not been shown by the State by evidence or otherwise. The mentioned regulation appears to be the only one adopted by the State Board of Health pursuant to the particular Act prior to the date of the alleged offense. What, if any, pertinent regulation by the "appropriate Federal drug authorities" was in force and effect at the time of the alleged offense does not appear.

I would accordingly vacate the judgment below and remand for the entry of a judgment of acquittal.