## 19720

The STATE, Respondent, v. James QUARLES, Appellant.

(200 S. E. (2d) 384)

414

*Dallas D. Ball, Esq.,* of Columbia, *for Appellant,* cites:

*Phillip K. Wingard, Esq., Sol.,* of Lexington, *for Respondent,* cites:

November 6, 1973.

LITTLEJOHN, Justice:

James Quarles (the appellant), Clayton Pack and Richard Wright were indicted for the offenses of housebreaking and grand larceny of the personal property of Patricia Smith. The indictment charged that the offenses occurred on September 4, 1972. The house from which the personal property was taken was not occupied and the offenses were not discovered until September 5, 1972. Pack and Clayton entered guilty pleas and testified on behalf of the State. Quarles pled not guilty and was tried and convicted by a jury.

Jack testified that he, Quarles and Wright broke into the house and took personal property therefrom on September

4, 1972. Wright testified to the same effect but was not certain about the date. Quarles did not testify. David Plyler, a witness for Quarles, gave testimony which warranted the conclusion that the offenses actually occurred on August 29, 1972. At the close of all the evidence the State was permitted to amend the indictment to allege that the crimes occurred "on or about" September 4, 1972, in order to conform with the evidence. Quarles has appealed, alleging error on the part of the trial judge (1) in permitting the amendment to the indictment, (2) in failing to direct a verdict because the State failed to prove ownership of the house entered and the property stolen, and (3) in failing to grant a new trial because of prejudicial testimony.

In this State there is a statute, similar to that in other states, permitting amendments to indictments. South Carolina Code § 17-410 provides:

"Amendments of indictments.—If (a) there be any defect in form in any indictments or (b) on the trial of any case there shall appear to be any variance between the allegations of the indictment and the evidence offered in proof thereof, the court before which the trial shall be had may amend the indictment (according to the proof, if the amendment be because of a variance) if such amendment does not change the nature of the offence charged. After such amendment the trial shall proceed in all respects and with the same consequences as if the indictment had originally been returned as so amended, unless such amendment shall operate as a surprise to the defendant, in which case the defendant shall be entitled upon demand, to a continuance of the cause."

It has generally been held in those jurisdictions having a permissive statute that where time is not of the essence of the crime, an erroneous or defective allegation as to the time of the commission of the offense is a matter of form which may be corrected. Annot., 14 A. L. R. (3d) 1297 (1967); 41 Am. Jur. (2d) Indictments

and Informations § 194 (1968); 42 C. J. S. Indictments and Informations § 242 (1944). It has also been stated that such provisions "have been given a liberal construction so as to carry out their purpose of simplifying procedure and furthering the ends of justice by eliminating technicalities." 42 C. J. S. Indictments and Informations § 230 (1944). A review of our decisions that have touched upon the subject indicates that this generalization fairly represents the view of this Court.

Critical determinations to be made by a court when confronted with the issue of amending the date alleged in an indictment is always whether the amendment alters the nature of the offense charged and surprises the accused, preventing a fair trial. An examination of the statutory definition of housebreaking and the common law definition of larceny compels the conclusion that the amendment allowed in this instance did not change the nature of the offenses originally alleged, for in neither is time of the essence. As was stated in *State v. Rush,* 129 S. C. 43, 123 S. E. 765 (1924):

"Since time was not of the essence of the offense charged, there was no necessity for the change in the form of the indictment . . . . But, since the amendment did not change the nature of the offense charged, it was entirely competent for the court to allow it." (citations omitted)

A motion to amend the date alleged in an indictment is addressed to the sound discretion of the trial judge, and the burden of showing an abuse of discretion and resulting prejudice is upon the party adversely affected by his ruling thereon. The record does not substantiate Quarles' contention that the amendment from September 4, 1972, to "on or about" September 4, 1972, surprised him and made it impossible to defend himself. We find no abuse of discretion and, consequently, no merit in this exception.

The indictment alleged that the house broken and entered, and the chattels stolen were the property of Patricia Smith. Quarles contends that the State failed in its burden of proving that the personal property was owned by Patricia Smith. He therefore submits that the judge should have directed a verdict of not guilty in his favor.

There is abundant evidence from which the jury was justified in finding that Patricia Smith was the owner of the house wrongfully entered, and of the property taken. Mrs. Annie Foster, mother of Patricia Smith, testified that her daughter owned a house on Crystal Springs Road. She said that her daughter lived there but at the time involved was attempting to find a place to move to the beach. She stated that while she was in charge of the house it was broken into and the breaking was discovered by her and her husband on September 5, 1972. Pack swore that he, Quarles and Wright took several items from the house, including a sewing machine. William Johnson, a sheriff's investigator, testified that he recovered a sewing machine from the house of Quarles. Mrs. Foster said that she went to the jail and identified her daughter's dinette and sewing machine. The exception is without merit.

Quarles also alleges error in the trial judge's refusal to declare a mistrial when one of State's witnesses, Clayton Pack, testified that he had seen Quarles in jail. On redirect examination the solicitor asked Pack the following question: "Have you had any contact with James Quarles since you were arrested?" His response was, "No sir, other than he [sic] being in jail with me one time."

Quarles contends that this statement had the effect of putting his character in issue and thus prejudicing him in the eyes of the jury. Pack had just testified that he and Quarles and Wright committed the offenses. The reply to the question was not intentionally adduced for the purpose of influencing the jury. The inference to be drawn from

the answer at most is that they were together in jail because of the offenses charged. Because of the improbability of any prejudicial effect on the jury, we are not prepared to say that the trial judge abused his discretion in refusing to grant Quarles' motion for a mistrial and for a new trial.

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.